# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HEIDI CHIAT, an individual, | 3:16-cv-00328-HDM-WGC |
| Plaintiff, | |
| vs. | ORDER |
| ELKO COUNTY SCHOOL DISTRICT, a governmental entity, STEVE COOK, an individual, LYNN MANNING JOHN, an individual, JEFF ZANDER, an individual, and MIKE SMITH, an individual, | |
| Defendants. | |

Before the court is defendants Elko County School District ("ECDS"), Steve Cook, Lynn Manning John, Jeff Zander, and Mike Smith (collectively "defendants") motion for summary judgment (ECF No. 27). Plaintiff has responded (ECF No. 30) and defendants have replied (ECF No. 33) to plaintiff's response. The defendants' motion is therefore ripe for judgment.

Plaintiff sued ECSD and four individual administrators, alleging federal Constitutional and state law claims relating to her First Amendment rights and protected speech. In addition to

1

ECSD, plaintiff has named various members of ECSD and the Owyhee Combined School ("OCS") including (1) OCS vice principal Lynn Manning John, (2) OCS principal Steve Cook, (3) ECSD superintendent Jeff Zander, and (4) ECSD deputy superintendent Mike Smith.

Plaintiff alleges one retaliation claim under 42 U.S.C. § 1983 arguing that she was subjected to an adverse employment action because of her constitutionally protected speech (ECF No. 1 (Complaint)). Plaintiff also alleges a state law claim for tortious discharge. *Id*. Defendants have moved for summary judgment on both of plaintiff's claims.

# I. Background

## A. Plaintiff's employment and licensure

Plaintiff commenced the Nevada teacher license application process with the Nevada Department of Education ("NDE") in September 2015 in preparation for an interview for a teaching job in Elko, Nevada (Def. Mot. Summ. J. Ex. 3 (Deposition of Heidi Chiat)). On September 22, 2015, plaintiff was offered a contract to teach fifth-grade at OCS (Def. Mot. Summ. J. Ex. 4). Plaintiff accepted the employment offer in a letter received by ECSD on September 30, 2015 (Def. Mot. Summ. J. Ex. 5).

The September 22 contract offer states that it was made "pending receipt of a copy of your certification for the state of Nevada and receipt of official transcripts in [the ECSD superintendent's] office . . . final approval by the Board of Trustees." (Def. Mot. Summ. J. Ex. 4). On October 28, 2015, plaintiff was advised by the NDE in an email that:

> Your application for an initial K-8 Elementary license has been evaluated and does not currently meet the minimum requirements. The license you applied for is a core

2

> teaching area and the requirements below must be met before a license may be issued: Praxis II Elementary. . . . You do not have a valid [Nevada] educator license until these steps are taken and you receive confirmation that the license has been issued. Your non-refundable fee and application are valid through November 29, 2015. If you do not provide the required information prior to that date you will need to submit a new application, new fingerprint card and new application fee.

(Def. Mot. Summ. J. Ex. 6).

On March 18, 2016, defendant Smith notified plaintiff by letter that her conditional employment with ECSD would be terminated. In that letter, quoting NRS 391.120(3), defendant Smith stated "it is unlawful for the board of trustees of any school district to employ any teacher who is not legally qualified to teach all the grades which the teacher is engaged to teach." (Def. Mot. Summ. J. Ex. 12). NRS 391.120(3) further provides that "the board of trustees shall suspend or terminate, as applicable, the employment of any teacher who fails to maintain a license." At the time of her termination, plaintiff had failed to meet the minimum requirements to be licensed as a teacher in Nevada and no license had been issued to the plaintiff by the state of Nevada.

**B. Alleged protected speech and adverse employment action**

In her complaint, plaintiff claims that "[p]rior to a negative evaluation received by Plaintiff on February 29, 2016, Plaintiff had complained up her chain of command regarding efforts by Defendant John and her family members to harass Plaintiff regarding her discipline and grading of students." (Complaint). Plaintiff further claims that her complaints "alleged favoritism by John of students that were related to John by blood." *Id*. Plaintiff asserts that her complaints of favoritism and harassment constitute protected speech.

3

Plaintiff also claims that she engaged in protected speech when she reported to defendants Cook and Zander, the Federal Bureau of Investigation, and the Bureau of Indian Affairs rumors that "an underage student was having an affair with a teacher at" OCS (Complaint).

Plaintiff alleges she suffered adverse employment actions in the form of a negative evaluation and termination as a result of her protected speech in violation of 42 U.S.C. § 1983 and Nevada state law.

## II. Legal standard

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978).

## III. Analysis

### A. Section 1983 First Amendment retaliation

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). However, "while the First Amendment invests public employees with certain rights, it does not empower to 'constitutionalize the employee grievance.'" *Id*. at 420, 126 S.Ct. 1951 (quoting *Connick v. Myers*, 461 U.S. 138, 154, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

In *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009), the Ninth Circuit articulated a five-factor test for evaluating First Amendment Retaliation claims. Initially the claimant "bears the burden of proof at trial of showing (1) that she spoke on a matter of public concern; (2) that she spoke as a private citizen rather than a public employee; and (3) that the relevant speech was 'a substantial or motivating factor in the adverse employment action.'" *Coomes v. Edmonds School Dist. No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016) (quoting *Eng*, 552 F.3d at 170-71). If the plaintiff satisfies the first three *Eng* factors, "the burden of

proof shifts to the government to show that (4) 'the state had an adequate justification for treating the employee differently from other members of the general public'; or (5) 'the state would have taken the adverse employment action even absent the protected speech.'" *Id*. (quoting *Eng*, 552 F.3d at 170-72).

*Eng's* factors must be met in order for a plaintiff to succeed on her claim and "a reviewing court is free to address a potentially dispositive factor first rather than addressing each factor sequentially." *Id*. at 1260. As such, the court will focus on the second, fourth, and fifth *Eng* factors.

For purposes of First Amendment protection, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, --U.S.--, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014). "Thus, to the extent that [plaintiff's] speech was within the scope of her employment duties, such speech is not protected by the First Amendment." *Coomes*, 816 F.3d at 1260.

Whether plaintiff spoke as a private citizen or a public employee is a mixed question of fact and law. *Id*. Plaintiff's job responsibilities as a teacher at OCS is a question of fact and the constitutional implication of those facts is a question of law. *Id*. "If [plaintiff's] speech owes its existence to [her] position as a teacher, [she] spoke as a public employee, not as a citizen." *Id*. (internal quotation marks omitted) (second and third alteration in original).

### 1. Speech regarding inappropriate teacher and student relationship

Plaintiff claims that she was retaliated against because she reported rumors of a sexual relationship between a student and a teacher at OCS. Defendants contend that plaintiff spoke regarding the inappropriate relationship as a public employee and such speech is thus unprotected. In support of their argument, defendants allege that, as a teacher, plaintiff is a mandatory reporter and had a legal duty to report the rumors about the relationship between the OCS student and teacher. Plaintiff responds that she is under no obligation to report "rumors" and those rumors "d[id] not trigger the basis for a belief the [student] was subjected to physical, mental or sexual abuse." (Pl. Resp. Mot. Summ. J.). The court finds plaintiff's argument unpersuasive.

NRS chapter 432B requires teachers to report neglect and abuse, including sexual abuse.[1] Furthermore, the uncontested facts show that plaintiff believed she had a legal obligation to report the rumors of the inappropriate relationship. In fact, in her email communication with defendants, plaintiff specifically referred to herself as a "mandated reporter" and said she had no choice but to report the rumors of the inappropriate relationship (Def. Mot. Summ. J. Ex. 6). Other courts have held that reports made pursuant to an obligation as a mandatory reporter are unprotected under the First Amendment. *See e.g. Eugenio v. Walder*,

---

[1] NRS 432B.220(1)(a) provides that a person employed by a public school "who, in his or her professional capacity, knows or has reasonable cause to believe that a child has been abused or neglected shall . . . report the abuse or neglect of the child to an agency which provides child welfare services or to a law enforcement agency."

7

No. 06-CV-4928 (CS) (GAY), 2009 WL 1904526, at *9 (S.D.N.Y. July 2, 2009) ("Plaintiffs' reports of suspected abuse to CPS are not constitutionally protected speech because Plaintiffs made those reports pursuant to their official duties and not as private citizens.")

Therefore, the court concludes that the undisputed facts establish that plaintiff spoke as a public employee and not as a private citizen when she reported an alleged inappropriate sexual relationship between the OCS student and a teacher. Thus, plaintiff's speech is not protected under the First Amendment.

**2. Speech regarding alleged favoritism and harassment**

Plaintiff claims that "prior to a negative evaluation in February 2016, Plaintiff jumped her chain of command regarding efforts by Defendant John to harass Plaintiff regarding her grading of students" and alleges that "[t]hese complaints alleged favoritism by John of Shoshone students who were related to John by blood over students not so related and/or of Paiute descent." (Pl. Resp. Mot. Summ. J.). Plaintiff argues that her "expressive activity took place away from her students and away from her classroom" and "therefore did not owe its existence to her job as a teacher." *Id*.

Defendants argue that plaintiff's speech was made pursuant to her job duties as a teacher and thus the speech owes its existence to plaintiff's public employment. In support of their argument, defendants point to various "Performance Responsibilities" that were part of the job posting for the position plaintiff was eventually hired to fill (Def. Mot. Summ. J. Ex. 15). According to the performance responsibilities, plaintiff was required to

8

maintain open lines of communication between students and parents, cooperate with other ECSD staff members, establish and maintain cooperative relations with others, maintain accurate, complete, and correct records, and assist the administration in upholding and enforcing rules, regulations, and policy. *Id*.

Plaintiff's communication to defendants on these issues relating to favoritism of members of the school and regarding her discipline and grading of students was within the scope of plaintiff's responsibilities as an educator and therefore was not made as a private citizen. *See Dorcely v. Wyandanch Union Free School Dist.*, 665 F.Supp.2d 178, 208-09 (E.D.N.Y.2009) ("Public employees who convey complaints or grievances about a matter pertaining to their official duties to their supervisors do so in their capacities as employees rather than citizens, even when the subject matter of their speech touches upon a matter of public concern, and therefore, such speech is not protected by the First Amendment.") (internal quotation marks and alteration omitted).

Because the undisputed facts establish that plaintiff's speech on the issue of alleged harassment, favoritism, discipline, and grading, was made as a public employee, rather than a private citizen, defendants are entitled to summary judgment on plaintiff's first claim for relief.

### 3. Fourth and fifth *Eng* factors

Finally, the court concludes that even if the plaintiff had presented sufficient evidence establishing triable issues of fact on her First Amendment claim that she spoke as a private citizen, the defendant has presented evidence that "the state had an adequate justification for treating the employee differently from

other members of the general public"; and "the state would have taken the adverse employment action even absent the protected speech." *Eng*, 552 F.3d at 170-72.

The parties do not dispute that plaintiff was not licensed as a teacher by the state of Nevada. The parties also do not dispute that ECSD explicitly made clear in its contract offer that plaintiff's continued employment was contingent upon plaintiff becoming a licensed teacher in Nevada. Thus, even if plaintiff had met her burden and satisfied the first three *Eng* factors, defendants have presented sufficient evidence that they both (1) had adequate justification for treating plaintiff differently from other members of the public, and (2) would have taken the adverse employment action even absent plaintiff's alleged protected speech. Therefore, there is no triable issue of material fact for trial and defendants are entitled to summary judgment on plaintiff's First Amendment claims.

**B.   Tortious discharge**

Under Nevada law, "[a]n employer commits a tortious discharge by terminating an employee for reasons that violate public policy." *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1064 (1998). "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory; thus, a plaintiff must demonstrate that the protected conduct was *the* proximate cause of his discharge." *Id*. at 1064 (emphasis in original). In other words, the protected activity must have been the sole proximate cause of the termination.

Here, plaintiff was informed that she was terminated because she failed to obtain a Nevada teaching license. Plaintiff was also

put on notice in her original offer from ECSD that her continued employment was contingent upon obtaining a Nevada teaching license. Finally, the NDE notified plaintiff that she was not in compliance with Nevada teaching licensure requirements.  Thus, plaintiff has not shown that material issues of fact exist that would establish her alleged protected speech was the proximate cause of her termination and defendants are thus entitled to summary judgment on plaintiff's second claim for relief.

**IV. Conclusion**

Plaintiff has not produced evidence to create a genuine issue of material fact for trial in response to defendants' motion for summary judgment.  Accordingly, defendants' motion (ECF No. 27) is **GRANTED** and judgment shall be entered in favor of defendants on all of plaintiff's claims.

IT IS SO ORDERED.

DATED: This 26th day of March, 2018.

_____
UNITED STATES DISTRICT JUDGE

11